Ray v. Township of Warren. Mr. Levinson. Good morning, your honors. I'd like to reserve three minutes for rebuttal. May it please the court. My name is Paul Levinson. I represent Plaintiff Appellant Lawrence Ray on this appeal together with Michael V. Gilberti seated behind me. This appeal from the District Court's grant of summary judgment based upon its conclusion that the defendant responding officers were entitled to qualified immunity presents important issues as to the parameters of the role of the trial court in determining whether qualified immunity can be properly applied. Each of your honors have confronted these issues in the past, especially Judge Fuentes in Curley 1 and Judge Jordan in Curley 2 and Judge Sirica. I know that you have also issued opinions citing to those cases. I would respectfully submit that the court below demonstrably failed to adhere to the well-established standards and jurisprudence in this circuit with regard to denial of summary judgment if there are disputed material historical facts relevant to the qualified immunity analysis. Let's talk about what's material here, all right, Counselor? What is it that you think is the most significant material fact that should have prevented summary judgment in this instance? I think there are two perhaps that come together in a juncture. Whether or not the officers went in wearing their criminal investigative hat with a warrant, in and of itself, unless you adhere to the Bogan case, the New Jersey case that's cited by the defendant's respondents, that standing alone under Cady v. Dombrowski, the failure to divorce the criminal investigative hat from the community caretaking hat may alone disqualify the officers at this stage of the proceeding from qualified immunity. There are enough historical facts in dispute with regard to what authority or authorization, the more euphemistic term used by the court below, they went in under. What was the, what did they do that would have led the district judge to conclude that this was a criminal investigation? Why is there a material issue of fact on that issue? Because they went in by their own admission, empowered to arrest Mr. Ray. Well, but weren't they called by the child's mother because she could not get the child or have visitation with the child that she was, that she had an order to visit with? She, there is an issue of fact as to whether she was entitled to visit that night. It is not entirely clear. There are facts in dispute as to whether it was her night to visit. There are facts going both ways. Yeah, but as far as the officers knew, I mean, they told her, I mean, she told them, I have this order, they checked, there was some kind of an order. There's, there's no reasonable dispute, is there, that they understood that the problem was that she thought the child was in the house and that the husband was in the house and that he was not responsive even though she could see him? That was, is there any legitimate dispute about that state of affairs? Her concern, her so-called concern had to do with her concern, and I, and this was an admission and a deposition that I took so I remember it very well, that she was concerned for the well-being, excuse me, for the fact that Mr. Ray was alienating her against her children. Whatever her subjective motivation was, the material fact from a legal perspective is, isn't it what Judge Fuentes was asking you about, and that is what the officers understood when they got there, not what she might have been thinking, but what was communicated to them. And I guess what I'm asking is, and I think this is the import of Judge Fuentes' question, I don't want Presumed to speak for him, is what did the officers understand while they were standing there at the, outside the residence? The record seems to indicate they understood she thought her husband was in there, he was unresponsive, the little girl, four, five-year-old, is in the house, and she's concerned. That's the state of the record from their perspective, isn't it? Well, there is no proof in the record that the little girl was in the house, but let's assume for the moment, for purposes of... You're not, you're not, you're not answering his question. You're not, you're not doing this here. Yes, that was their, that was their expressed concern. Okay? Not just their expressed concern, but do you have any facts to indicate that that wasn't the state of affairs as they understood it when they got there? That's, that's what we've got to grapple with. What would a reasonable officer be thinking there at the scene? And the record appears to indicate they get there, she's visibly upset, she indicates he's got the child, he's in there, he's not responding. Is there, do you have something else to indicate that at that point they're thinking, criminal investigation? What did they then do? Let's look at what they actually did and whether it was objectively reasonable. They don't call Lieutenant Leffert their superior. Before you, before you get to that, Ken, do you have a response to Judge Jordan's question? Is there something else? I understand there are things that happen later and I certainly don't want to prevent you from talking about those, Mr. Levinson. I just want to know in this, all it is, nothing tricky here, is there something that indicates that they had an investigative motive other than this concern caretaking motive when they're there right at the beginning of the scene with the mom outside the house? At the very inception, they, they seem to have an invest, excuse me, a concern. About the little girl, right? But they don't do anything. They, they don't, if they were truly concerned, they all admit there's no emergency, there's no exigent circumstances. They don't, they don't go through the glass. They, they mosey around to quote Judge Sasso. Did they have and were they shown a visitation order? There is a dispute about that. That is not, the court even noted in a footnote that, that, that plaintiff-appellant disputes whether they were shown. Some officers say they were, some say she didn't have it, they didn't see it. So there's an issue of whether or not she, she actually showed them the custody right that night. Is the strength of your argument that this was investigatory the fact that the police officers had an arrest warrant? They, they, they applied for an arrest warrant. They broke in. Wait a minute. Did they have an arrest warrant or not? They had what purported to be an oral warrant from Judge Sasso who didn't even have the command and called the judge, the municipal judge who had no jurisdiction. Could, could you, could you tell us what, what the police officers had in terms of a warrant at that point? Can I read something? Then you can, you can characterize it any way you want. But we're trying to find out factually what the police officers had. And then, then feel free to characterize it. There are disputes as to what they had. But may I, can I read, Your Honors, a passage from the record that might help answer it and show some of the disputes that, that you ... Go ahead. At A107, this is the testimony of Lawrence Greco. He's the gentleman who actually was in the house with the baseball hat, the father of Mr. Ray. And he says ... The father-in-law? The father. The grandfather's testimony is going to help us know whether they had an arrest warrant or not? If you ... When they asked, when they walked in, the first thing I really asked was who they were. I said, do you have a search warrant? The answer, the reply from Officer Calabrese was, don't worry about it. I have a verbal warrant. My reply was, a verbal warrant? Then another officer said, don't worry. It's on the way. No warrant ever showed up. And then he asked, and this is the other important issue that we haven't addressed, the open door issue. How did you get in? The door was wide open downstairs is the response. I says, no, it wasn't. The door was wide open, says the officer. We walked in. I said, no, it wasn't. I checked the house. The door was closed with a four-by-four that was about 20 feet long, maybe. They wouldn't admit to breaking in. I said, you broke in. Now what the officers did to Judge Sasso was to not tell him the truth. They told him something that was deliberately false in order to get this so-called authorization. May I ask you a question? Because I know your time is running and I did want to get your take on this. Supposing we disagree with you that this was not investigatory. Supposing we were to say, consider it hypothetically if you like, that the police were there to enforce or to assist in visitation of Ms. Ray with her child. They nevertheless made a warrantless entry. Would it be your position that we should look at that warrantless entry as a caretaking function or as an entry pursuant to emergent circumstances? What would be your take on that? Judge Fuentes, it certainly was not an entry pursuant to emergent circumstances. They all admit that the emergent, Calabrese I believe said it was not emergent. My question is, what is the appropriate standard? How would we look at this entry? I believe that it doesn't pass muster under a warrant and it doesn't pass muster under community caretaking. I think there are disputed issues in the record that prevent that determination at this stage of the proceedings. That's what this appeal is all about. The court below made the determination of facts and credibility. It decided this disputed material, historical facts and went directly to objective reasonableness by deciding the facts. Let me ask you this, Mr. Levinson. You've got, there are two alternatives here and if there's a third, please help us understand what it is. One alternative is they have a concern about the child and they're trying to figure out is there a way we can properly go in and see what's going on about that, which we might loosely label or at least the district court did a community caretaking concern, right? And then the other alternative is that they have an arrest warrant and they go in pursuant to the warrant. Now, if they legitimately thought they could go in pursuant to the community caretaking function, would you address whether or not the law is clearly established on whether or not they could do that? Assume that that's what they were doing. Is the law clearly established about community caretaking as it pertains to a dwelling? No, it is not in this circuit clearly established with regard to a dwelling. This court has never said, has never endorsed that community caretaking applies in a residence. It is, let me say, nibbled around the edges, but it has never endorsed that. And some circuits have warned against that danger because it is such an, the exception swallows up the rule. Right, so it's not clearly established. Now, let's look at the arrest part. Now, assume it's that, we're on that set, and I hope my, your time's up. May I, okay. Okay. Is the, if the officers legitimately believed, assume that, that they had authorization from Judge Sasso, then that would be a legitimate entry as well, even if they were investigating, right? It turns out they're wrong, he didn't have authority, but if they in good faith thought, I've got a warrant, and they went in. That, by definition, under the good faith exception, would be legitimate, right? It's not good faith if you don't tell the magistrate the true facts. I, I, I. I'm with you. I'm just asking you now to make sure we're in sync on the law, right? If they thought it was good, if they, if they understood, hey, we've got a legit warrant, that would necessarily not be a Fourth Amendment violation, right? If they understood they had a legitimate warrant, and they, and they had a legitimate reason to have that understanding, as opposed to veering from their chain of command and, and not telling the truth to the magistrate, then, then that would be objectively reasonable, yes. So the route one has to take to get the liability for your client is to go down the track of its investigative, not community care taking, and they knew they were not giving correct information, and therefore, they couldn't have reasonably relied on the warrant. It's got to go down that route. Is there any other route to liability for you? Well, it, it also is not, assuming that your honors were to find that community care taking applies in the home. What's, it's, it's not community, they couldn't have reasonably, objectively believed they were going in under community care taking, because if you look at the testimony and the record as to what happened with Judge Sasso, they were not discussing community care taking with him. They were discussing a warrant. How could it, how could they objectively, reasonably believe they were community care takers if they? Judge Sasso said in his deposition testimony, which you rely heavily on, that their concern was for the child, where they're talking about can we get in with a warrant, and the question, I assume, was you or one of your colleagues is, or I, I shouldn't assume who it was, but the child. I mean, that was, am I wrong about that? I'm pretty sure that's the record. They were talking about the child and the father. The judge even set bail over the phone. So, so how could they believe it was community care taking if he's setting bail? Aren't these disputed facts that preclude some, we're not talking about whether they're entitled to qualified immunity at all. Your honors have all, in various cases, said that qualified immunity, it's decided at this stage, and I, I know your honors are giving me more time than I'm entitled. How can you rely on a decision below where there's a videotape, the best evidence, and it's not cited? I, I, I submit to you that in those circumstances, this case has to go to trial, because the court. Judge Fuentes has a question. I'm sorry, I didn't see you. If we were, if we were to conclude that there are no material issues of fact, and that we were to decide with respect to a standard, whether it's community care taking or whether it's emergent circumstances, are, are either of those standards settled in our circuit such that it's clearly established and the officers are not entitled to qualified immunity? Under, under emergent circumstances, there was no emergent, there's no indication that there was a rape going on, that the child was hurt. That's fine. Okay. In fact, the officer said there was no emergent. It wasn't emergent. But my question had to do with clearly established. I don't believe that, that community care taking in the home was clearly established, but that's not a free pass for the officers. Gotcha. Now, how about... I, I know what the, what, what the downside of that is, and I... It's not clearly established either, was it? I think it was more established as... I'm not sure what we're going to do with it, but I, I wanted to get your take on that. I, I think it was, as I recall, and we didn't focus as much on it because of the officer's own admission, although it was, it was brief below, but I, that the, under Sherar and some of the other, other precedents, I don't believe that it was, I think it was more, if it was established at all, it was more than community care taking with regard to the home. I don't know if that's a good answer or not, but that's... Thank you, Mr. Levinson. Thank you. Have you back. Good. Mr. Fernandez. May it please the Court, Juan Fernandez on behalf of the defendants' appellees. Your Honors, the District Court considered the second prong of the saucier and concluded, the saucier matter, and concluded that, that it did not need to consider the first prong under the circumstances presented because of the fact that it was apparent that an objectively reasonable officer would not know that this entry into the home was unlawful, and I believe that the questions asked to the appellant, and I stand by this, that the law is unclear in this circuit as to... Now, you, you supplied a 28-J letter, and you attached a case from California that discussed the emergent circumstance doctrine. Is it your view that, I mean, you sent us that case. Is it your view that that's the appropriate doctrine for us to consider? Judge, in that, in that circumstance, I think the facts are much less than what we have here, but in, with the, the point of that case being that when a individual has a concern, an officer has a concern regarding an individual in a house, and this, and obviously the, your, your circuit has not decided whether or not the community caretaking applies to entering into a home, that if that concern is legitimate, the officer should and could enter under the community caretaking doctrine. Well, that, that wasn't the case that you sent us, is the case that you sent us discussed the emergent circumstances doctrine, unless I misread it, but I, I thought it was a case from the Eastern District of California? Yes, Judge. I thought you sent us that case because you wanted us to consider the doctrine, so. I mean, California, California, if I remember correctly, has adopted the emergent circumstances doctrine. That is correct, Judge. And uh. Is that the doctrine that you, is that why you sent us the case? Yes. So, that you consider adopting that doctrine? Judge, I believe you should adopt, the court should adopt the doctrine. How, how, how would that be relevant here when all the players, the wife after the fact, the police officers all indicate we didn't think it was an emergency? How would, how would a review of an exigent circumstances doctrine play in? I don't, I don't think with regard to this case, it's on point because my, my position is that even though you don't have exigent circumstances, and with these facts in this case, there's a, there's previously, previous domestic violence, there's a contentious divorce, the officers know these two people, the mother calls from outside the house, says my daughter's in there. We're, we're, yeah, we're familiar with the factual background. The question is, why would we get into exigent circumstances and talk about exigents? It sounds like you're trying to kind of backdoor it, that everybody says it wasn't an emergency, but you want us now to view it and talk about it and treat it as if it's an emergency. And I guess I'm asking, how do we logically get there when the people who were involved said I didn't think it was an emergency? Your Honor, I think what I tried to do with that case was to show some of the trends in the other districts. However, I don't think that you need to treat this matter as an, in your analysis, as an exigent circumstance, an entry as a result of exigent circumstances. So your pitch needs to be? Community caretaking. Community caretaking. But, that's kind of a slippery slope, isn't it? I mean, once you go down that road, you're justifying entry into, into a home warrantless entry on the basis of community caretaking. When there's no emergency, admittedly. Judge, when I say no emergency, there wasn't a child screaming in the house. There was no emergency. I mean, that's the, that's the kicker, right? Mr. Levinson is careful to point out that they, they walk around the house for close to an hour. They make phone calls, you know, and they say later, hey, no emergency. How do you cabin a community caretaking function, which allows you to go into somebody's house when there's no emergency? Judge, every other time, the. This vague feeling of unease is enough? No, Judge. And I think this case is very different, because these officers had a history with these two parties. And these two parties were in a contentious divorce. There was restraining orders back and forth. When an individual, when a young lady comes and tells you that there's a man in the house, I, it's my, it's my husband. He doesn't answer the door. And the police officers testify that every other time they've gone, he has answered the door. That sounds like an exigency, right? I mean, maybe this would be a real different case if the officers and the wife had said, you know what? I was really worried. You know? He didn't come to the door. He's always come to the door before. But the child's in there. I don't know what's going on and why he's unresponsive. That by itself, I'll acknowledge to you, Mr. Fernandez, that sort of has the feel to me of an exigency. But I'm not sure what to do with the case where everybody says later, I didn't think it was an emergency. And they were walking around the house kind of acting like it wasn't an emergency. So you, it seems like you either have to acknowledge what Mr. Levinson's saying, and that is, ooh, we maybe don't really know what the facts are and those facts are pertinent, or you have to own up to what they said and say, well, this was an emergency. I'm not sure you can have it both ways. You can kind of say, it's not an emergency, but it sure feels like an emergency, which is the tone I think I'm getting from your comments. And Judge, I think what community care taking speaks is a heightened sense of awareness that there may be a problem. You don't have to have a, obviously, if you have a problem and someone's in there screaming, there's exits and circumstances. Community care taking doctrines is separate and apart from that. It sounds, however, that you're justifying one standard or the other depending on the circumstances. I mean, we do have to opt for one or the other, don't we? We're talking about a warrantless entry into a home. Didn't Katie versus Dombrowski make some distinction between houses and cars? Yes, Judge. However... Well, then what standard should we consider with respect to each? Judge, if under facts like this case, where there's been a history... But then you're saying that we have to look at the facts and then we're going to pick a standard that we're going to adopt. Well, Judge, in most cases, I would assume that would be before the court. For example, the drug overdose, other cases. These are not individuals who have a history with the police involving a divorce case where there was issues going back and forth. What if the police did not act in something... You're still not. I think you're still not addressing the question. What applies to cars and what applies to houses? It seems to me that emergent circumstances is a much more stringent standard. And it would seem to me that because of the sanctity of the home, you would want to apply a stringent standard to the home and perhaps a more relaxed standard to cars where there's less expectation of privacy. Does that make sense to you? Yes, Judge. And is that not the way we should think about this? Or should we just look at the facts and then apply a standard? I think from a community caretaking standard, Judge, is what they ask you to look at is what the concern is. And the courts have consistently held that if a child is in danger, regardless of whether they're in a car, a house, anywhere, if it's the issue of a child in danger, that the community caretaking function should be exercised as long as it's reasonable. I guess we'll disagree on this. You see, I'm looking at a house and I'm looking at a car and you're saying it just depends on the circumstances and whether there's a child involved or not, which doesn't seem to be the way the courts have been handling these issues. And as long as there is an uncertainty in the law, if the officer does not know what actually the law is, and in this situation, they not only are walking around the house, they're trying to get access to the house, they have a dispatcher call in twice, they knock on every door and there's no answer, they call a judge to get information, it is that uncertainty that leads you to the conclusion that this is a community caretaking function and it was reasonable for these officers, regardless of the fact whether or not the warrant was valid or not. You don't think that waters down the Fourth Amendment in any respect, that police can just go and say, well, you know, community caretaking. There's a loud noise in the house and the neighbors are complaining. I think we have a community caretaking function here, we'll just break down the door. Judge, if those were the facts in a vacuum, absolutely. I guess that's where I have a problem with your position, because then it depends on the facts. It's the officers then would have no guidance at all. It justified entry based on what happened. Judge, unless there is case law and there's a clearly definitive answer, there were several officers who testified who were not at the scene, that if they knew that there was this situation right there where they felt the child was in danger, they would have broken down the door and gone in. Exigency. Yeah. Why do you need or why do the police need the community caretaking doctrine at all? Why shouldn't this be handled under exigent circumstances all the time? Judge, it could be. However, there are certain instances like this, for example, if the child is locked in a room and there's an issue regarding a child, you don't physically hear a noise. You have enough information from an outside source telling you that they're concerned about their child. That's exigent circumstances. I mean, the child's locked in a room. Why wouldn't you? Your problem here, isn't your problem here, counsel, not that this wouldn't look like exigency to most people, but that you had officers on the scene who said, hey, it's not an exigency, and they were doing things that indicated they weren't rushing to get in. I mean, I keep getting the feeling that you're trying to put this into exigency mold without calling it exigency because they said it was an exigency. So well, let me ask this question instead of making a comment. Katie starts, Katie versus Dombrowski, starts by making the distinction between automobile searches and dwelling places. The dissent starts by saying, in fact, that, quote, the court purports merely to rely upon our prior decisions dealing with automobile searches. So it looks like the majority and the dissent are all treating Katie as a case that depends on specific distinctions that exist between automobiles and dwellings. How, in the face of that, could we say, yeah, that relaxed standard applies to dwellings? Judge, I don't believe that that is where I think you need to reach. I think what the issue is, whether or not there was, and it's really fact-sensitive here, that there was a concern that something was happening to a child in the house, they Yes. And are there material facts with respect to that? No, there are none. There are none with regard to the fact that what the officers What was the information that the officers looked at that led them to conclude there was a child in the house? There was a individual It turned out that that was not the case. That's correct. And the individual who was the father was not in the house as well. The mother claimed What were they looking at? What did they have to go by to enter the home without a warrant? Judge, they had the fact that these officers knew these individuals by their first name. They knew that there was a potential, and very different than if they would come to your or my house, there was a potential of a dangerous situation based upon what they knew about these individuals, all the restraining orders, the court cases, the custody dispute, and they had been to the house so many times that they said in their testimony, this is the first time we knocked on every single door. She observed an individual inside and the person did not come to the door. They didn't break in the door. They then called over to the dispatcher and called twice to see if they can get him to come to the door. They didn't stop there. They called the judge and this was this uncertainty as whether or not they could enter judge, which is really the issue of qualified immunity. This uncertainty they had as to whether or not they could enter was checked 3, 4, 5 times and at the last phone call with the judge is when they entered the premises. Is it significant that they, what they told the judge in order to get the quote oral warrant? I don't think it is for this analysis because I believe that what they told judge, what the question was, what one officer told judge was the door was open and whether or not the door is open or locked or barricaded as it was with a wood, with a wood stand is not really relevant as to why, how they can enter the house. In fact, but if they don't tell the truth, aren't they, aren't they working against this good faith presumption? Sure and judge, if they were not telling the truth, if there was a question as to whether or not they were telling the truth, then I would agree with that statement. The only statement said was the door was open and the door was unlocked, there was a wooden barrier holding the door, which they went through and jimmied the wooden barrier and entered and I think that, that is very different than saying, you know, we have some kids screaming in there and it didn't happen. There's a, the fact pattern here and it's undisputed as to what happened and what was said is clear that they, that one officer said the door was open and then the judge said go in. I'm wondering what you need if we were to adopt your view that this is community caretaking. What information would an officer need at the scene in order to make a warrantless entry based on community caretaking, just to see somebody move inside a house and think that there's a four-year-old child inside, would that be sufficient? No judge, I think if the officers had an order from the court saying a custody was to be turned over at this time and the officers always went there and handled these custody disputes this way and for the first time. What way? They would always get calls from each person, they would mediate and then the transfer would happen. They wouldn't be entering the house, right? No, they would not. Okay, but you think that that would justify the warrantless entry in this case under the community caretaking standard? Under these circumstances where an individual is identified in the house, that there is tumultuous litigation, both civil and criminal, against the parties and there's an individual who says, I have an order and Mr. Wray always opened the door when there was an issue regarding an order and they resolved it and it didn't happen this time, I think that yes, they can go in on community caretaking. Thank you. Any other questions? Anything else you want to tell us? No. Thank you, Judge. Good. Thank you very much, Mr. Fernandez. Mr. Levinson? Thank you again, Your Honors. What Mr. Fernandez just told you is exactly why this case has to go to a jury. Was the door open? Was it unlocked? What was said to the judge? What wasn't said to the judge? How can the court below resolve that? Does it matter whether the door was open or unlocked? It matters that they... In terms of what standard we apply? It matters if Your Honors are going to consider that they went in under some kind of color of warrant, whether they lied to get it. Yes. Yeah, it's still a warrantless entry no matter how you look at it. He also said the child was in danger. That's an issue of fact. There is no... He keeps saying, well, the child was in danger. There is no... To what extent does the history between the parties count in an evaluation like this? I'm glad you asked that, Judge Scirecca, because it counts very heavily in this instance. Because instead of calling Lieutenant Leffert, who also knew of the history and who was the direct report, and that was the chain of command, they called the judge. Now, we cited case law in our brief that if police officers don't follow protocol, that impacts on the qualified immunity analysis, and that's something that a jury should assess. Why were they calling the judge rather than the person who knew? There's not a dispute, is there, Mr. Levinson, that some of these officers knew and had been involved in prior calls with the Rays, right? Some of them had been, yes. So there isn't... It's undisputed that they were aware that this was a highly contentious and a difficult custody situation, right? Like many custody situations. There was no indication that anybody had ever been hurt. That's a different issue. Were there restraining orders? I believe there was a restraining order on her, not him, if my memory of the record is correct. In addition, there had been allegations, and it's in the record, by Dyfus of abuse when the children were in the home of the mother. It's contrary. It's counterintuitive. The problems were on the other side, yet the police were judging Mr. Ray to a higher standard. Was there a protocol or policy in place that these police officers had to... You mentioned the word protocol before, that the police officers or the police department had to follow in circumstances like this. Lieutenant Leffert testified that the... And he chewed Payolella out, the sergeant, the commanding officer at the scene, for not calling him. Why did you call... I mean, I'm paraphrasing. Why did you call the judge? You knew you were supposed to call me. And then... Assume that's... It's true that they should have called Lieutenant Leffert. That we take that as a given. Your case can't hang on that, right? I mean, a failure to follow internal protocol about who you call first... No, it doesn't hang on it, but it's another material fact that can't be decided by the court below. I also want to point out that Judge Jordan and Reedy v. Evanson, the case we handed up under Rule 28J, you noted as to whether or not... In a footnote, whether or not a case involved split-second decisions. And this was not a split-second decision case. And I think that's one of the reasons why community caretaking doesn't work here, as opposed to exigent circumstances. Other than not calling Lieutenant Leffert, what should the police have done? What would have been the proper way for them to have handled this, given the facts or the information they were given by Mrs. Gray? They had other, less intrusive means available to them, which is one of the standards under traditional community caretaking, that you avail yourself of other ability to investigate. For example, they never... And I don't want to be accused of engaging in second-guessing after the fact, because that's... No, no, but it's a kind of situation... But they could have called the cell phone of the... ...find themselves. They never called the cell phone of the daughters. They never... There were a whole bunch of things that they didn't do. They struggled, got a cell phone, and they should have called it? The other daughter had a cell phone. Oh, okay. The teenage daughter. I'm sorry. Okay. And... Okay. No, no, no, no. I'm a little unnerved there for a minute. No, no. I don't want to go down that road, Your Honor. One of the things we haven't talked about also, and we're entitled to the reasonable inferences, is the whole issue of the cover-up, of the modification, of the alteration of the police report. Mr. Fernandez talks about the... Granting that maybe they did things that were less than laudatory after the fact, you'd agree, wouldn't you, that our focus needs to be on what was going on at the scene when they were deciding whether to go in or not, right? Yes, but the reason that I would submit to you, it's a fair inference, that the reason that Lieutenant Leffert and Chief Stahl directed the Office of Calabrese to excise the reference to Judge Sasso is that Sasso's presence mucks it up with the, under Katie, the criminal investigative hat versus the community caretaking. And as long as Sasso's in the picture, it's not community caretaking. That's the whole point. No, no, no. And that's an issue of fact. That relation back is an issue of fact that I think can't be resolved at this stage of the proceedings. What should the police have done under the circumstances other than call the teenager on her cell phone? They shouldn't have gone in without a legitimate warrant or some other exception to the Fourth Amendment that's legitimate in a home. That's what they should have done. If you bless community caretaking here, you're opening a door, to use a bad metaphor in this case, that may... No, no. We understand that. So it would seem under the circumstances, they shouldn't have done anything because it appears that they could not get a warrant under what they knew at that point. And they didn't know enough to know that there was an exigency, so why are they going in? They didn't really know that there was a danger. The question is that they shouldn't have gone in. They shouldn't have done anything. Is that the answer? I think ultimately it has to be. Unless you find, and I don't know if you can find on this record because there are material disputed historical facts, that there was some kind of danger to a child that wouldn't abate and that they had to go in at that moment, then they shouldn't have gone in. Their own actions and conduct as captured on videotape and as presented in their own testimony is demonstrably to the contrary. So if they had felt there was a danger, and it's in the record, they could have gone right in under exigency, broken the glass, whatever. It wasn't there. The facts aren't there. They're certainly in dispute as to whether they were there. So how can you find community caretaking on this record? I have no problem with the idea that if they reasonably and objectively believe that the child was in danger, that they could break that door down and go in. I think that that might rise to the level. It's a slippery slope, but they certainly didn't have it here. But I'm just saying hypothetically, if their knowledge was that there's a four-year-old child inside that house, there's an adult male inside the house, they reasonably believe that the child was in danger, could they not break the door down and go in? Could they not then make a warrantless entry? Under those circumstances, they probably could. But this was the father of the child in a custody dispute, not a stranger with a four-year-old doing something untoward. An unresponsive father, right? That's the hypothetical situation. Well, that's the purported situation that they deal with. He's usually always been responsive. He's unresponsive now. He also – there's a dispute as to whether he was there at all. I mean, I understand. Okay. Thank you. Thank you. Mr. Levinson, thank you very much. The case was very well argued. We will take the matter under advisement.